JAMI L. FERRARA
Attorney at Law
California State Bar No. 189109
105 West F Street, Suite 208
San Diego, California 92101
Telephone: (619) 239-4344
Email: jamiferrara@msn.com

Attorney for Mr. Tafolla

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE RUTH BERMUDEZ MONTENEGRO)**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 23CR1022-RBM |
| Plaintiff, | Date: September 29, 2023 |
| v. | Time: 9:00 a.m. |
| ZENON TAFOLLA, | DEFENDANT'S SENTENCING MEMORANDUM |
| Defendant. | |

TO:     ANDREW R. HADEN, ACTING UNITED STATES ATTORNEY,
        MARK W. PLETCHER, ASSISTANT UNITED STATES ATTORNEY
        CAMERON L. ERVIN, UNITED STATES PROBATION OFFICER

        Zenon Tafolla, the defendant in this case, by and through his counsel,

Jami L. Ferrara, Esq. and Mariela Barreto, Esq., and pursuant to Third Revised General

Order No. 350, hereby file his sentencing memorandum.

//
//
//
//
//
//
//

# I.

## <u>THE INDIVIDUAL BEFORE THE COURT</u>

On April 26, 2023, Zenon Tafolla was found west of the Calexico Port of Entry, approximately 50 yards north of the border fence.  Presentence Report, hereinafter PSR, 4.  He was spotted by a Border Patrol agent on Highway 98 who was performing line-watch duties.  <u>Id.</u>  Mr. Tafolla admitted that he was a Mexican citizen with no legal right to be in the United States.  <u>Id.</u>  Mr. Tafolla was offered a fast-track plea agreement with the Government and he pled guilty on June 20, 2023 to a single count information, admitting that he was guilty of attempted re-entry after deportation, in violation of 8 U.S.C. § 1326(a) and (b).  <u>Id.</u>

Mr. Tafolla is 33 years old.  He is from Buenavista, Michoacan, Mexico but has lived mostly in the U.S. since he was 10 years old.  PSR 11.  His father emigrated to the U.S. when Mr. Tafolla was very young, leaving behind Mr. Tafolla and his siblings, who were raised by their father's sisters after Mr. Tafolla's mother joined his father in California.  <u>Id.</u>  They lived in an area of  Michoacan that was controlled by drug cartels and it was very violent.  <u>Id.</u>  It eventually became too dangerous for Mr. Tafolla to remain in Mexico and he was sent across the border in Arizona in 2000 to reunite with his parents.  <u>Id.</u>  His last sibling in Michoacan was able to get across the border approximately three years later.  All of Mr. Tafolla's family is undocumented in the U.S..

When Mr. Tafolla was 14 years old, his mother became gravely ill with kidney disease.  PSR 11.  She was in and out of the hospital and not able to supervise Mr. Tafolla and his father was working long hours at his job.  He started hanging around with the wrong crowd in his neighborhood, including gang members and drug users.  He became both – he started using marijuana and methamphetamine as a young teenager and became a member of a local street gang.  By the time he was 15 years old, he was addicted to methamphetamine and getting into trouble in school and arrested frequently as a juvenile offender.  PSR 8.  Drug abuse changed his

personality and he admits he was out of control for a long time as a teenager and young adult.  It alienated him from his family and took him away from them – both with terms in custody and with deportations.  PSR 7, 10.

Upon his release from custody and deportation in 2016, Mr. Tafolla realized that he needed to change his life if he was going to survive.  He stopped using drugs and started seeing a counselor to help him to remain sober and adapt to life in Mexico.  He was able to reconnect with his longtime girlfriend, now his wife, Pamela, and when she saw the changes that he was making, she agreed to move to Tijuana and establish a life with him there.  He worked in call centers, using his bilingual abilities, and Pamela worked as a social worker in San Diego, crossing the border every day.  Things got complicated, however, when Pamela became pregnant in 2021 and gave birth in 2022.  PSR 4.  The long hours crossing the border to go to work were grueling for her and she struggled with returning to that lifestyle after giving birth to their son, Xavier.  It finally became too much for her and she decided to return to San Rafael with Xavier, where she would have help from her family and from Mr. Tafolla's.  But that meant that Mr. Tafolla was once again alone in Mexico, feeling even worse than before because now, he had a son growing up without him.

In April 2023, Mr. Tafolla decided that it was worth the risk to try to return to San Rafael and be with not only Pamela and Xavier, but also to be close to his parents and siblings. He knows what it is like to be a child whose parents live in another country.  It was a hard decisions for Mr. Tafolla – he had lived in Mexico for over six years, had established a life for himself and had a job.  If it was just him, he would have stayed and made peace with his life in Tijuana.  He made the decision to try to slip into the U.S. without being caught and he failed.  He regrets breaking the law and knows that he must spend time in prison as a consequence.

Mr. Tafolla and his family have now accepted the reality of their lives in two countries.  He and Pamela have decided to give it another try together in Tijuana and will no longer consider his return to the U.S. as a viable option.  Mr. Tafolla

apologizes for his actions in this case – he understands the gravity of his mistake and asks only for understanding that he wanted to be with his family and to give his son a childhood with two parents in the same house.  He promises to do that in Mexico in the future.

## II.

## RECOMMENDED GUIDELINES CALCULATION

Mr. Tafolla pled guilty with a plea agreement with the Government.   The recommended Guidelines calculation is as follows:

| | | |
|---|---|---|
| Base Offense Level | 8 | [U.S.S.G. § 2L1.2(a)] |
| Prior Re-entry Convic. | +4 | [U.S.S.G. § 2L1.2(b)(1)(A)] |
| Pre-deport Felony Convic. | +8 | [U.S.S.G. § 2L1.2(b)(2)(B)] |
| Acceptance of Responsibility | -3 | [U.S.S.G. § 3E1.1] |
| Fast-Track Disposition | -2 | [U.S.S.G. § 5K3.1] |
| ***Adjusted Offense Level*** | ***15*** | |

Mr. Tafolla is in a Criminal History Category III.  PSR 8.  At an Adjusted Offense Level 15, the guideline range is 24-30 months in custody.  As of the day of sentencing, Mr. Tafolla will have served 157 days (approximately 5 months) in custody.

## III.

## SENTENCING RECOMMENDATION

Pursuant to the Supreme Court ruling in United States v. Booker, 543 U.S. 220 (2005), the Federal Sentencing Guidelines are not mandatory.  Although district courts are allowed to consider the guideline range under the Guidelines, they are also instructed to consider the directives set forth in 18 U.S.C. § 3553(a).  In short, the Sentencing Guidelines are only one of several factors that district courts must consider in sentencing individuals.

Section 3553 first states that a district court "shall impose a sentence sufficient, but not greater than necessary." 18 U.S.C. § 3553(a) (2015). The district court is directed to consider "the nature and circumstances of the offense" and "the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1) (2015). Next, the district court must consider the need for the sentence imposed:

-to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
-to afford adequate deterrence to criminal conduct;
-to protect the public from further crimes of the defendant;
-to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner

18 U.S.C. § 3553(a)(2) (2015). Additionally, the district court must consider the kind of sentences that are available. 18 U.S.C. § 3553(a)(3) (2015).

Mr. Tafolla asks the Court to sentence him to 15 months in custody for the reasons set forth below:

**The nature and circumstances of the offense:** Mr. Tafolla was arrested on April 26, 2023 after attempting to re-enter the United States illegally and having last been deported on December 14, 2016. PSR 4. He was attempting to return to his family in San Rafael, California. PSR 4-5. His wife and year-old son had returned to the U.S. several months prior to be closer to their extended family and Mr. Tafolla was struggling on his own in Tijuana. He pled guilty on June 20, 2023 pursuant to a Fast-Track plea agreement with the Government. PSR 4, 15.

**The history and characteristics of the defendant:** Mr. Tafolla is 33 years old. PSR 3. He came to the United States illegally when he was 10 years old and his entire family, parents and siblings, live in the United States. PSR 11. Mr. Tafolla began experimenting with drugs as a young teenager, quickly becoming addicted to methamphetamine and having run-ins with the law as a juvenile and young adult. PSR 6-10, 12. This led to strained relationships with his family and even more distance as he was deported repeatedly between 2010 and 2016, several times in relation to criminal convictions. In 2016, after his last deportation, Mr. Tafolla finally understood

that he needed to change.  He put in the work with a therapist in Mexico and got sober and came to terms with having to live in Mexico, apart from his parents and siblings.  PSR 11-12.  He got work in call centers and married his childhood sweetheart, Pamela, who moved from San Rafael, California to Tijuana in 2017.  PSR 11, 13.  Their son, Xavier, was born in 2022.  PSR 11.

**The seriousness of the offense/respect for the law/just punishment:** A sentence of 18 months in custody is sufficient, but not greater than necessary to address the seriousness of the offense, promote respect for the law and serve as just punishment for Mr. Tafolla.  The opening lines of 18 U.S.C. § 3553(a) state that "the court shall impose a sentence ***sufficient, but not greater than necessary***" to comply with the purposes set forth in the remainder of subsection (a)(2).  Mr. Tafolla knows that he has committed a serious offense and accepts that he must be punished.  He asks the Court for mercy in understanding his motives to return (to be with his wife and son).  He pledges not to make the same mistake again – he knows that he must live in Mexico and that going to prison again for illegal re-entry does nothing to help his family, let alone his relationship with his young son.

**Adequate deterrence/protect the public:** Mr. Tafolla  understands that he may not continue to re-enter the United States illegally without risking increasingly longer terms of imprisonment and separation from his family, especially his wife and son.  He is not a threat to the public and has no desire to repeat his past mistakes and reoffend. Following his deportation after the sentence in this case is completed, Mr. Tafolla plans to return to Tijuana, use his contacts to find work again in a call center and establish a home for himself and his wife and his son.  His wife plans to work in San Diego again as a social worker and work harder to adapt to a bi-national life with Mr. Tafolla and their son.

**Educational/vocational training/medical care, etc:** Mr. Tafolla has no medical needs at this time.  He would like to participate in educational and vocational programs while he serves his sentence.

1    ***The kind of sentence available:*** Mr. Tafolla asks this Court to sentence
2  him to 15 months in custody with no Supervised Release to follow, as recommended
3  under U.S.S.G. § 5D1.1(c).

4

5                                          **IV.**

6                                    **<u>CONCLUSION</u>**

7          For the reasons stated above, Mr. Tafolla asks this Court to sentence him
8  to 15 months in custody with no Supervised Release to follow.

9

10                                          Respectfully submitted,

11                                          *S/Jami L. Ferrara*

12  Dated: September 20, 2023              JAMI L. FERRARA
                                           Attorney for Mr. Tafolla
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



8/25/23

Dear: Your Honor Montenegro

My name is Zenon you are having a Blessing day. I'm just stealing a couple minutes from you, to say Yes I'm sorry For Breaking the Law. All I could say From the Bottom of My heart is that, I was trying to Re unite with my Baby Boy Xavier Born on 8/29/22, He will be one year old. My plan was to go Back to the Bay area, where all my family Recides and also my wifes. Having a Baby is the Best thing that ever happen to me Hugging him for the first time was something I cant Find the word to Express Amount of energy that Joy that I felt at that moment.

My wife and I made the decision of me taking the Risk so we could Be together and provide My Baby a Better Future, I did had a life while living in Tijuana, The years I liveds in Tijuana I was Employed. All I wanted to do here in the USA was Be with my family be part of my baby's life. I'm a hard worker, I'm like a Mexican Bob the Builder, when it comes to working with tools. I've done roofing, construction, landscaping, but my favorite job is working on Cars, and the tree service, because of the work out you get out of it. Since a little boy, I remember Barely Been able to walk, I was already in the field with my mother, cutting citrus Back in Michoacan hard field work. All I wanted was to work and Be with my Familia.



If God Allows for me to see Freedom again. I will be staying in Tijuana, mexico. Continue to work in the Call center Busines Because it pays more than hard labor, Hoping to one day own my own Call center to provide For my family all I can, since they are my spark to continue to do good in life. Thank you for Reading my Letter and god Bless us all.

To: Honorable Judge Montenegro,

I am Zenón's wife. I'm certain you have heard it all before. But it doesn't mean my statements are any less true. My husband is one of the best people I or anyone has ever met. He is one to literally take the clothes off his back to give it to someone in need.

I've known Zenon since we were teens. Despite growing up in an abusive household, and having been subjected to many age inappropriate situations; my husband is a miracle. He had some trouble in his past but managed to turn his life around and seek a better future. He is only guilty of wanting to be with his family, his actions driven by the desire to provide our son with a better life and more opportunities.

I was supposed to go to law school, I wanted to change the world. As I imagine might have been your reason for becoming a judge.

Right now, on this day, I would not want to be in your shoes. You hold the fate of so many lives in your hands with your decision. It seems to me that you have an impossible job of upholding the laws of this country. Laws that don't uphold the beacon of hope imprinted on the statute of liberty; "Give me your tired, your poor, Your huddled masses yearning to breathe free…". Laws that go against the very fabric humanity and separate families.

Thank you for your attention and valuable time.

Have a wonderful day and God bless.

Respectfully,

Pamela Torres



**GEO**
The GEO Group, Inc.

**The GEO Group, Inc.®**
*EL CENTRO DETENTION FACILITY*
*1115 North Imperial Ave.*
*El Centro, California 92243*

August 23, 2023

To Whom It May Concern:

Mr. Tafolla, Zenon USMS#20482111 is currently working in the Food Service Department, as kitchen worker from 06/23/2023 to present.
Mr. Tafolla is responsible for the daily cleaning of the kitchen, dining hall, dish room, as well as the sanitization of all areas.

Mr. Tafolla is fulfilling job responsibilities, maintaining a standard of conduct and work wells with others.

Respectfully,

*J. Moreno*
Food Service Manager